# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA

Kee'Andus Barnes

1:25-cv-274-MR

Plantiff,

**COMPLAINT**

vs.

Case No. 12CRS-53727-28

Teresa Jardon; (Warden FCI) Both capacities,
(officer FCI) Both capacities, T. Cannon; (SRG FCI)
Officer Fry (officer FCI) Both Capacity Officer Benfield; (officer FCI) Both capacities
Nancy Johnson (unit manager FCI) Both capacities
Sirchie Acquisition Co. LLC; Both capacities, Premier Biotech Inc; Both capacities
, Monica Bond; Both capacities, Statesville Division

Defendant(s).

## A. JURISDICTION

Jurisdiction is proper in this court according to:

☑ 42 U.S.C. §1983

___ 42 U.S.C. §1985

___ Other (Please specify) Statesville Division

## B. PARTIES

1. Name of Plaintiff: Kee'Andus R. Barnes
   Address: 1001 Veazy Rd    1001 Veazey Road
   Butner, NC 27509

2. Name of Defendant: Teresa Jardon
   Address: 5150 Western Avenue
   Foothills Correctional Institution
   Morganton, NC 28655

   Is employed as  Warden   at  Foothills Corr. Inst.
                  (Position/Title)    (Organization)

Was the defendant acting under the authority or color of state law at the time these claims occurred? YES ✓ NO ___, if "YES" briefly explain:
Each time I was searched At FCI Ms. Jardon was the person who sent the officers to thoroughly search All of my person/items/property while she was the overseer of me being walked through A metal detector And cell sensor. On october 18th 2022-continued→
*see page 1*

3. Name of Defendant: Officer Fry (both capacities)
   Address: 5150 Western Avenue
   Foothills Corr.
   Morganton, NC 28655

   Is employed as Correctional Officer at Foothills Corr. NCDAC
   (Position/Title)        (Organization)

Was the defendant acting under the authority or color of state law at the time these claims occurred? YES ✓ NO ___, if "YES" briefly explain:
On october 19th 2022 officer Fry signed A false DC-160 property Form Falsely stating that I refused to sign it. He intentionally/maliciously manipulated the integrity of the inmate grievance remedy process By knowingly making A false statement to cover up sergeant Cannon Blatant mistakes/wrong doings.

4. Name of Defendant: T. Cannon And officer Benfield (both capacities)
   Address: 5150 Western Avenue
   Foothills Corr.
   Morganton, NC 28655

   Is employed as SRG Sergeant at Foothills Corr. NCDAC
   (Position/Title)        (Organization)

Was the defendant acting under the authority or color of state law at the time these claims occurred? YES ✓ NO ___, if "YES" briefly explain:
After I was taken to solitary confinement on 10/18/22 my property was given to Sgt. Cannon where he maliciously confiscated A package of my legal mail. Staff came to bring my property on 10/18/22 and I notice that my legal mail was missing. I was given

(Use additional sheets if necessary.) (parties section B. continued) see page 1 - additional sheets see page 1-6

C. NATURE OF CASE
*continued see PAGE Seven*

Why are you bringing this case to court? Please explain the circumstances that led to the problem.

m bringing this case to court due to the violations of my constitutional rights, The refusal of NCDAC to fully investigate my grievances, The malicious confiscation of my legal mail that contained davits from the main witness in my case which caused me not to be able to file my innocence claim, - unfair process that the NCDAC handles confidential informant cases. They charge us solely off the inmant statement with no proof to back the statement. For example I was charged and found guilty of none charge "A-16" when there was zero evidence to prove I possessed A cell phone at that time when I charged oct 2022, the unfair deceptive trade practice of premier and sirchie, the refusal of staff to review camera footage when I'm trying to defend myself And prove staff misconduct

*continued* → D. CAUSE OF ACTION *See pages 6-11*

I allege that my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations: (If necessary you may attach additional pages)

a. (1) Count 1: __Teresa Jardon__
   (2) Supporting Facts: (Describe exactly what each defendant did or did not do. State the facts clearly in your own words without citing any legal authority. Use additional sheets if necessary.)
   Ms. Jardon authorized staff to confiscate all of my personal property. She authorized staff to test a piece of paper (that was allegedly found inside of my property) using the faulty Sirchie Narks II drug *continued*

b. (1) Count 2: __Officer Fry__
   (2) Supporting Facts: (Describe exactly what each defendant did or did not do. State the facts clearly in your own words without citing any legal authority. Use additional sheets if necessary.)
   On 10/19/22 officer Fry signed a false DC-160 (presented by Sgt. Cannon) falsely stating that I refused to sign the DC-160. Camera footage will prove that he lied to cover for Sgt. Cannon. They never ~~two~~ attempted to serve me the DC-160.

E. INJURY

How have you been injured by the actions of the defendant(s)?

s I've been injured by defendants when warden Jardon authorized her staff to seize my personal property/ legal mail. It contained important material including affidavits from victims in my case, which left me unable to file my innocence claim in court. I suffered emotional stress because I waited years to receive those affidavits and staff maliciously seized it due to a false positive test result and staff inability to send the alleged contraband to get verified, which caused me not to be able to file an innocence claim. I'm currently doing 1½ years of solitary confinement due to staff finding me guilty of infractions solely off a statement from a confidential informant; my offender rights were violated in the process, there were no substantial physical evidence to prove alleged guilt, I'm doing an estimate of 183 ~~consecutive~~ days of 23:1 solitary confinement; an estimate of 65 days of 24 hour solitary confinement to make a total of 1½ years of consecutive solitary confinement for a charge I did not commit with no proof that I committed the charge. This is cruel & unusual punishment, and very excessive. I lost privileges ~~Telephone~~, canteen, visitation, recreation, educational & religious programs for infractions I did not commit or substantial physical proof that I committed the infraction. My religious Rasta crown was maliciously seized denying me the right to exercise my spiritual beliefs. I'm being targeted with consecutive confidential informant infractions due to their lack of substantial physical evidence and ability to charge/and find me guilty without giving me any information to adequately defend myself. Cruel & unusual punishment and violation of my constitutional rights.

## F. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

Have you filed other lawsuits in state or federal court that deal with the same facts that are involved in this action?  YES _____  NO __✓__

If your answer is "YES", describe each lawsuit. (If there is more than one lawsuit, describe additional lawsuits on additional separate pages, using the same outline.)

1. Parties to previous lawsuits:

Plaintiff(s):_____

Defendants(s):_____

2. Name of court and case or docket number:

_____

3. Disposition (for example, was the case dismissed? Was it appealed? Is it still pending?)

_____

_____

_____

4. Issued raised:

_____

_____

_____

5. When did you file the lawsuit?_____
   Date: Month/Year

6. When was it (will it be) decided?_____

Have you previously sought informal or form relief from the appropriate administrative officials regarding the acts complained of in Part D?  YES __✓__  NO _____

If your answer is "YES" briefly describe how relief was sought and the results. If your answer is "NO" explain why administrative relief was not sought.

I filed several grievances related to these matters but staff Dismissed them



or refused to process them.

## G. REQUEST FOR RELIEF

I believe I am entitled to the following relief:

monetary damages for violating several of my constitutional rights/prison rights. All of my gain/Earn time restored; expungement of records, funds restored that was taken due to guilty DHO verdicts for All infractions listed in this claim. Requesting to be taken off H-con status and placed back into regular population. Requesting All of my legal mail back from SRG Sgt. T. Cannon. Requesting monetary damages for the illegal confiscation of my Rasta "Religious" Crown, reimbursement for All infractions listed enclosed in this

JURY TRIAL REQUESTED    YES ✓    NO ____

Claim, for withholding my legal mail (Affidavits etc.) which caused me to not be able to file An innocence claim within the courts, for All the stress, pain/suffering & cruel/unusual punishment I'm enduring due to the malicious misconduct bestowed upon me by All parties listed enclosed in this claim.

Signed at <u>Granville Correctional</u> on <u>February 25th 2025</u>
      (Location)        (Date)

I Kee'Andus Barnes swear to the truthfulness made in the statement of the aforementioned

Signature: Kee'Andus R. Barnes

Address: Kee'Andus Barnes #1010067
1001 Veazy Rd.
Butner, NC 27504

Phone: 9195753070
E-Mail: HTTPS://DAC.NC.GOV

*Notary*
Sworn Before me this 27 day of Feb 2025.
notary: [signature]
Comm Ex: 05/30/27

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed/ delivered to the following individuals at the addresses listed:

_____

_____

_____

_____

_____

_____

This the _____ day of _____, 20_____.

_____
Signature

_____
(Print Name)



*Section B Parties continue

1. Teresa Jardon

**Explain**: Teresa Jardon sent two correctional officers to come restrain me and take me straight to segregation. She then authorized them to see all of my personal property. My legal mail was confiscated during the process, which is a violation of my Federal rights under the (14th Amendment).
She authorized staff to test a piece of paper that they (allegedly found inside of my property) using a faulty "Nark II" drug testing kit.
Then she authorized her staff to charge me with an A-16 (cell phone) charge, an A-14 (gang activity) charge, and an A-12 (contraband/drug) charge. The A-16 and A-14 charges were given to me over 90 days from when the infractions allegedly took place. She authorized these charges without my substitute and without any substantial evidence.
A DC-160 property form was by Officer Benfield on 10/18/22 listing all the contraband items that were taken out of my property. The DC-160 never listed that any of my legal mail was taken. It didn't mention that any of my pictures were taken, nor did it mention anything about taking any K2-positive paper.
Officer Benfield maliciously confiscated my religious/ indigenous tribal crown and stated that Sergeant Cannon had my legal mail and family pictures. I filed a grievance on 10/31/22 stating that I was missing property, legal mail, and pictures, without receiving a DC-160 property form stating that the items were taken by staff due to them being contraband. My grievance was rejected and enclosed with a false DC-160 stating that Sergeant Cannon confiscated four photos, SRG-related, coated papers with K2-positive results, legal and assorted papers that were SRG-related. It had a date of 10/19/22 and was signed by Sergeant Cannon and Officer Fry, stating that I refused to sign it — which was and is absolutely false.

2. <u>Name of Defendant: Jancy M. Johnson 5150 Western Avenue Foothills Morganton NC 28655 Is Employed as Unit Manager at Foothils Correctional NCDAC</u>

Yes, the defendant was acting under the authority or color of state law at the time these claims occurred

**Explain:** Jancy Johnson refused to process any of my grievances while I was housed on her units. She wrongfully and maliciously rejected my grievous falsely stating that it appeals disciplinary action. J Johnson refused to look at the camera footage that would've proven that staff lied and the DC-160 was indeed false. She then sent me a fraudulent DC 160 property sheet to cover up the malicious confiscation of my legal mail and family photos by Sergeant Cannon I wrote several grievances regarding my missing property but J Johnson refused to process any of them which violated my 14th amendment due process. I wrote to North Carolina Prison Legal Services explaining that Ms Johnson refuse to process my grievances the 90-day time frame was coming up and I didn't know what to do concerning my grievances. The NCPLS told me to write the Warden and send a confidential grievance straight to the department secretary of prisons I sent the same grievance that Ms Johnson refused to process to the Prison Commissioner and the date he received my grievances was on 1/13/23 which fell within the 90 day time frame from 10/19/22. Unit manager Kizer rejected my grievance stated it exceeded the 90-day time frame

15

because he didn't receive it from the commissioner until 1/25/23 he refused to go by the date the commissioner dated that he received it which violated my 14th amendment rights of due process

3. <u>Name of Defendants: Sirchie LLC 100 Hunter Pl Youngsville NC 27596, Premier Biotech 723 Kasota Avenue SE Minneapolis, MN 55414</u>

Yes, defendants were acting under the authority or color of state law at the time these claim occurred.

**Explain:** On 10/19/22 staff at Foothills Correctional allegedly found a small square piece of paper that allegedly tested positive for cannabinoids" K2". Due to the false presumptive test I was first sent to segregation for 30 days, secondly I was placed on solitary confinement for 6 months ICON, thirdly I was sent to the RDU program where I was placed on 23 and 1 lockdown for 9 months. in 2017 Premier Biotech distorted the truth during the bidding process to the Doctors regarding the percentage that the S i r c h i e drug kit produces false positive results, which subject me to a false positive result that led to my legal mail being confiscated, solitary confinement, lost of gain time, loss of phone privileges, loss of canteen, loss of job and loss of educational programs.

4. <u>Name of Defendant: Monica Bond, 4207 MSC Raleigh North Carolina 27699-4207</u>
<u>Is Employed as Chief Disciplinary Hearing Officer (DHO), North Carolina Department of Adult Correction (NCDAC)</u>

Yes, defendant was acting under the authority or color of state law at the time these claims occurred.

**Explain:** Monica Bond is a Chief Disciplinary Hearing Officer at NCDAC. She maliciously upheld sanctions against me when there were no substantial evidence to prove that I was guilty of the allege infractions. I explained to her that my offender rights were violated but she refused to investigate and correct the problem. She wrongfully upheld an A-12 (contraband) charge against me knowing that the presumptive test result was never verified by an Approved Analytical laboratory. The infractions listed in this compliant stem from infractions that occurred on 10/19/22 and 9/23/24

**<u>*Section C Nature of Cause Continue</u>**

If I don't shed light on the unfair due process and unfair Administrative Remedy procedures going on in the prison then staff will continue to falsely charge me and find me guilty of infraction without any substantial physical evidence to prove my allege guilt. Staff refuses to process grievances then intentionally wait until the last minute to say we exceeded the 90-day timeline limit. In the Administrative Remedy procedures they solely go by whatever staff says happen. When I asked them to review camera footage to prove my innocent they refused. Eight of my last 10 infractions stems from confidential informant infractions. When dealing with those infractions staff charge us with whatever the informant say we did even when there is no proof to prove that the informant is telling the truth Their excuse is the informant was reliable in the past I understand that they can take informant information into account but they shouldn't charge and

/ι

find us guilty of infractions solely because informant was reliable in the past that gives informants leeway to make any type of accusations against any inmate they have a problem with because they know that inmate will be charged. I understand according to staff they cannot divulge any information that will reveal the identity of the informant but at the same time they also withhold a lot of important information that prevent us from adequately defending ourselves from the most extreme prison sanctions impose such as solitary confinement loss of phone, recreation, canteen, visitation, education/ religious programs etc. Staff finding us guilty of presumptive test results without having them verified by an Approved Analytical laboratory has recommended by the company which results in my legal mail being confiscated due to the false positive results

## Section D Cause of Action

1. Teresa Jardon continued testing kit she authorized staff to seize my legal mail due to the faulty presumption positive test results she never sent the paper to a forensic laboratory to confirm the faulty presumptive positive test results. Each Nark II Sirchie kit includes a warning label that clear eplains false positive results are possible so "All' test results must be confirmed by an Approved Analytical Laboratory. Due to her failure to send the paper to the lab I was found guilty of the suspected contraband which resulted in a guilty disciplinary conviction that subject me to sanctions including solitary confinement loss of privileges including food packages commissary and telephone and loss of access to prison rehabilitation programs loss of good time and family visitation rights she authorized staff to charge me with possession of a cell phone (over 90 days from when the alleged possession of the cell phone took place ) when there were no substantial evidence that I ever possessed a cell phone at that time

2. T. Cannon confiscated my legal mail allegedly due to a small square piece of paper (testing K2 positive) that claims she found inside my property. In my write-up she never stated that she found the small piece of paper located inside of my legal mail. When I filed my grievous regarding my legal mail they rejected my grievances due to T Cannon telling them that the paper was found inside of my legal mail which could've contaminated my legal documents. She tested the paper using a faulty Nark II drug testing kit that resulted in a positive presumptive result. The Nark II kit comes with a warning labor that states false positive results are possible so all test results must be confirmed by an Approved Analytical laboratory.T Cannon fell to confirm the presumptive test through an Approved Analytical laboratory. She never gave me a DC-160 (per policy) stating that she confiscated any of my personal property due to contraband. Once I filed a grievous regarding that matter T Cannon introduced a false DC - 160 with Officer Fry name attached to it stating that I refuse to sign. T Cannon never attempted to serve me that false DC 160 she introduced the DC-160 with Officer Fry stating that I refuse to sign in order to cover her tracks for taking my legal mail and my family pictures without merit. She confiscated my family pictures alleging they were gang related. The pictures weren't showing any gang signs or any gang graffiti. The **DHO** stated that my pictures weren't ganging related and T Cannon failed to return them back to me. Instead she charged me with possessing a cell phone with no substantial evidence that I possess a cell phone other than a confidential informant telling them that I

/7

ship into the facility with a phone. She charged me with the phone over the 90 day time frame from when the alleged infraction took place.

3. On 10/18/22 Officer Benfield confiscated my religious / indigenous tribal crown without merit, a valid reason or proper documentation. This was a **malicious and targeted act** that deprived me of my religious property **without due process or any formal notice**.

4. The unit manager officer wrongful rejected my grievance stating that it exceeded the 90-day time frame from the 10/19/22 incident. Due to Foothills failure to process my grievance I sent it to the Commissioner which he dated it received on 1/13/22 which was within the 90-day time frame from 10/19/22 but the Unit Manager refused **to honor the Commissioner's received date** and rejected my grievance as untimely. This action constitutes a **violation of my 14th Amendment right to due process**, as it improperly blocked me from accessing administrative remedies.

5. Sirchie and Premier Biotech fail to disclose the risk of cross reactivity and provided misleading training materials to the State. They both breached their duty of care Sirchie instructed the Department of Corrections that any yellow or orange coloration on a Nark testing strip always indicate the presence of synthetic cannabinoid despite knowing that proposition to be false Sirchie misled DOC employees about the risk of cross-reaction misrepresenting the types of compounds that cause false positive results and downplay the importance of confirmatory testing. For its part, Premier failed to identify cross-reactive agents as instructed by the DOC's solicitation falsely claimed that it had seen no evidence of unreliability and misrepresented the Nark II error rate in its initial bid to the DOC and in Subsequent Communications. Premier failed to disclose in his bed that the Mark II did not meet the DOCs accuracy requirements. Sirchie failed to disclose that the Nark II false positive rate exceeded both the 0.5% minimum accuracy bar and the 10% contact termination threshold.

6. Burton M. Adams violated my offender rights by not allowing me to refute evidence. I asked him several questions regarding the allege evidence against me but he was unable to answer any of my questions because he had not at that time looked at the evidence that was presented against me, Therefore, he was not in any position to commence my hearing but he was allow too. He too violated my offender rights by refusing to look all evidence (camera footage) that I requested on my statement form. He maliciously and wrongfully and found me fully guilty of an A-14(gang activity) & A-22 (instigating a assault on staff) when there were no substantial physical evidence to prove that I participated in any gang activity or instigated an assault on any staff members. He denied me the opportunity to prove my innocence by refusing to look all evidence including camera footage.

7. Monica Bond, I specifically explained to her that my offender rights were violated, including violations of my due process rights under the 14th Amendment, and that there were procedural and evidentiary failures in my disciplinary case. Despite being made aware of these serious issues, M. Bond refused to correct the problem, and instead allowed the sanctions to stand. This action reflects a willful disregard for my

constitutional rights and a failure to provide a fair and impartial disciplinary process as required under state and federal law.

**\*Applicable Laws Violated**

- **First Amendment** – Right to petition the government for redress of grievances; right to free exercise of religion (confiscation of religious tribal crown; denial of grievance processing).
- **Fourth Amendment** – Protection against unreasonable searches and seizures (illegal confiscation of property and legal mail).
- **Fourteenth Amendment** – Right to due process and equal protection under the law (delayed charges, fraudulent documentation, and denial of grievance processing, false charges).
- **Eighth Amendment** – Protection against cruel and unusual punishment (long-term solitary confinement without evidence or fair hearing).
- **Sixth Amendment** – Right to a fair and speedy hearing (disciplinary actions based on informants and faulty tests without confirmatory evidence).
- **Title 42 U.S.C. § 1983** – Civil action for deprivation of rights under color of law.

**Count One: Teresa Jardon (Staff, Foothills Correctional Institution)**

On or about **October 18, 2022**, **Teresa Jardon** ordered two officers to forcibly restrain and place me into **segregation**, violating my **Fourth and Fourteenth Amendment rights**. She authorized a search of my personal property without cause or warrant and allowed the confiscation of my **legal mail**. On or around **October 18, 2022**, **Teresa Jardon** authorized two correctional officers to restrain me and immediately place me in **segregation**. She also authorized the search and seizure of all my **personal property**, including my **legal mail**, which constitutes a **violation of my Fourteenth Amendment rights**.

During this unauthorized search, staff used a **faulty presumptive drug test kit (Nark II)** on a piece of paper allegedly found in my property. No confirmatory lab test was conducted, yet I was charged with the following infractions:

- **A-16:** Possession of a cell phone
- **A-14:** Gang activity
- **A-12:** Possession of contraband or drugs

The A-16 and A-14 charges were issued **over 90 days after** the alleged incident, without substantial evidence and without following proper due process.

On **October 18, 2022**, Officer Benfield issued me a **DC-160 property form** that **did not list** any confiscated legal mail, photos, or K2-positive materials. Officer Benfield also maliciously confiscated my **religious tribal crown** and stated that **Sergeant Cannon** had my legal mail and family photos.

19

I filed a grievance on **October 31, 2022,** reporting the missing legal mail and pictures. The grievance was falsely closed with a **fraudulent DC-160** that listed four photos and legal papers as "SRG-related," allegedly tested positive for K2. It was falsely signed by **Sergeant Cannon** and **Officer Fry**, stating I refused to sign it — which I did not.

**Count Two: Officer  (Unit Manager, Foothills Correctional)**

**Officer** acted under color of state law as unit manager at Foothills Correctional. He **wrongfully rejected my grievance**, falsely stating that it was untimely and exceeded the **90-day filing**

Staff used a **Nark II presumptive drug test kit**, which is known to produce **false positives**, to test a small piece of paper allegedly found in my property. Without lab confirmation, I was charged with:

- **A-16:** Possession of a cell phone
- **A-14:** Gang activity
- **A-12:** Possession of contraband (synthetic cannabinoids)

The A-16 and A-14 infractions were filed **more than 90 days** after the incident allegedly occurred — violating my **14th Amendment due process rights** and **North Carolina prison administrative policy.**

The **DC-160 form** issued by Officer Benfield **did not list legal mail, photos, or religious tribal items** as confiscated. My indigenous tribal **crown** was also taken without justification — a violation of the **First Amendment (free exercise of religion)** and **Fourth Amendment**.

Jancy Johnson refused to process my grievance; I followed advice from **North Carolina Prisoner Legal Services (NCPLS)** to send a confidential grievance to the Commissioner. The **Commissioner received it on 1/13/23**, within 90 days from the October 19, 2022 incident.

However, Officer still rejected my grievance, **using the later internal receipt date of 1/25/23**, violating my **due process rights** under the **14th Amendment. Officers**, acting under color of law; **wrongfully rejected** my grievance related to these events, claiming it was untimely. I followed protocol and advice from **NC Prisoner Legal Services (NCPLS)** and submitted my grievance to the **Commissioner**, who received it on **January 13, 2023 — within 90 days** of the original incident. This constitutes a **due process violation** under the **14th Amendment** and a denial of my right to petition for redress under the **First Amendment.**

**Count Three: Sergeant T. Cannon (Foothills Correctional Staff)**

**Sergeant Cannon confiscated my legal mail and family pictures** based on a faulty drug test result and failed to issue me a **DC-160 as required by NCDAC policy**. Later, she introduced a **fraudulent DC-160**, signed by **Officer Fry**, claiming I refused to sign it — which is untrue.

20

She also allowed staff to say that the alleged contraband was found **inside my legal mail**, without ever stating that in the original write-up. This violated my:

- **First Amendment** (seizure of legal mail)
- **Fourteenth Amendment** (due process denial)
- **Fourth Amendment** (unlawful seizure)
- **Eighth Amendment** (punishment without evidence)

She charged me with **possession of a cell phone** based only on a confidential informants statement, without **any physical evidence**, and outside the **90-day time frame**, further violating **due process rights**.

### Count Four: Officer Benfield (Foothills Correctional Staff)

On **October 18, 2022, Officer Benfield confiscated my religious tribal crown** without justification, documentation, or following policy. This violated my:

- **First Amendment** – Right to free religious practice
- **Fourth Amendment** – Protection from unlawful seizures

### Count Five: Jancy Johnson (Unit Manager, Foothills Correctional)

**Jancy Johnson** systematically **refused to process** any of my submitted grievances. She allowed a **false DC-160** to remain on record and refused to view **surveillance footage** that could prove the truth. She improperly claimed my grievance was a **disciplinary appeal**, which it was not, and declined to process it.

Her actions violated:

- **First Amendment** – Right to petition government through grievances
- **Fourteenth Amendment** – Due process and equal protection violations
- **Title 42 U.S.C. § 1983** – Liability for acting under color of law to deprive me of rights

### Count Six: Premier Biotech & Sirchie (Drug Test Manufacturers)

**Premier Biotech** and **Sirchie** produced the **NIK MOD 2 drug test kits**, used to allege I possessed synthetic cannabinoids. These companies:

- **Failed to disclose false-positive rates**
- **Provided false misleading training materials to DOC**
- **Falsely claimed no evidence of unreliability in state contracts**
- **Omitted warnings about cross-reactive substances**
- **Failed to disclose the risks of cross-reactive substances,**
- And **misrepresented the error rate** in state bids.

These acts violated their **duty of care** and directly led to my:

- **Solitary confinement (6+ months)**
- **RDU program (23/1 lockdown for 9 months)**
- **Loss of visitation, canteen, phone, education, work programs**
- **Confiscation of legal mail and religious tribal items**

All without **lab-confirmed evidence**, violating my **Eighth and Fourteenth Amendment rights**, and enabling **unlawful punishment based on unreliable, unverified test kits**.

**Count Seven: <u>Monica Bond (Chief Disciplinary Hearing Officer, NCDAC)</u>**

**Monica Bond,** as Chief DHO, **upheld sanctions** despite a complete lack of **substantial evidence**. Even after I explained that my **offender rights were violated**. She failed to ensure due process and refused to intervene, **Monica Bond upheld sanctions** against me despite there being **no substantial evidence**. I informed her that my **offender rights and due process were violated**, but she **refused to correct or investigate** the violations, allowing unconstitutional sanctions to stand, thus:

- Violating my **Fourteenth Amendment** (due process)
- Enabling cruel and excessive punishment in violation of the **Eighth Amendment**
- Acting under color of law to deprive me of my rights in violation of **Title 42 U.S.C. § 1983**

**\*\*\*<u>Overreliance on Unverified Informants and Resulting Harm</u>\*\*\***

It is well-documented that the use of inmate informants, particularly those with their own pending charges or disciplinary actions, creates a high risk of false accusations. In my son's case, **eight out of ten infractions** were based solely on the statements of other inmates acting as "informants." These individuals often have personal motives — such as seeking sentence reductions, avoiding their own disciplinary penalties, or gaining other benefits — that create a strong incentive to fabricate or exaggerate claims.

Despite this, prison staff accepted these accusations at face value, **without conducting a full and impartial investigation** or allowing my son to present evidence in his defense. This practice violates the most basic principles of fairness, due process, and administrative justice.

The result has been **severe and compounding harm**, including:

- **Prolonged confinement** of 23 hours per day in restrictive housing.
- **Loss of family visitation** and ability to maintain vital social connections.
- **Revocation of communication privileges**, including monitored phone calls and secure messaging ("getting out" app, text messaging, or other electronic contact).
- **Loss of personal property privileges** and recreational opportunities.
- **Damage to rehabilitation and release prospects**, as these disciplinary actions remain in the record and are weighed against parole, work assignments, and good-time credit.

The absence of procedural safeguards — such as independent verification of informant statements, corroborating physical evidence, or meaningful opportunities for the accused inmate to respond — undermines both justice and institutional safety. This unchecked reliance on informants fosters an environment of mistrust, manipulation, and abuse, where inmates can weaponries the system against each other with impunity.

This is not only unjust but counterproductive to rehabilitation. A disciplinary system that relies heavily on unverified informant claims creates a climate of fear and retaliation rather than correction and reform. **I have been denied my right to be heard and has suffered disproportionate punishment without credible evidence, solely because prison staff chose to believe informants without proper scrutiny.**

Prison officials have repeatedly relied on unverified statements from inmate informants — many of whom have their own disciplinary or criminal motives — to impose severe sanctions on my son. In eight out of ten recent infractions, no independent evidence was presented, no thorough investigation was conducted, and my son was denied a fair opportunity to present his side. As a result, he has suffered prolonged restrictive housing of 23 hours per day, loss of visitation and communication with family (including secure messaging and phone access), removal of personal privileges, and lasting harm to his rehabilitation and release prospects. This unchecked reliance on incentivized informants, without corroboration or procedural safeguards, violates fundamental principles of fairness and due process, enabling false accusations to inflict disproportionate and irreparable damage.

The facility's repeated reliance on unverified inmate informants many of whom have clear incentives to fabricate testimony in exchange for leniency—has inflicted severe and disproportionate harm. In my case eight out of ten disciplinary infractions were triggered solely by informant claims, with no corroborating evidence or meaningful investigation, and he was systematically denied the opportunity to present his side. Research confirms the unreliability of such testimony: jailhouse informants are implicated in **one in five** wrongful convictions later overturned through DNA exoneration Innocence Project, and false informant testimony accompanied **15 percent** of all DNA-exonerated wrongful convictions—and **50 percent** of those involving murder WikipediaKentucky Innocence Project. In death-penalty cases, informant testimony contributed to false convictions in **45 percent** of analyzed wrongful cases WCLawR. The unchecked acceptance of their testimony—without safeguards, corroboration, or transparency—transgresses fundamental due-process protections, enabling false accusations to impose lasting punishment, isolation, and loss of family and rehabilitative opportunities."

### Use of Faulty Drug Test on Legal Mail and Resulting Harm

Prison staff, acting under the authority of facility leadership, used a *Sirchie* and *Premier Biotech* presumptive drug test kit on a small piece of paper allegedly found in my legal mail. The kit produced a "positive" result for synthetic cannabinoids (K2), despite the manufacturer's own clear warning that false positives are possible and that **all results must be confirmed by an approved analytical laboratory** before taking action. No such confirmation was ever sought.

Instead, based solely on the unverified presumptive result, I was subjected to extreme punitive measures: **30 days in segregation**, followed by **6 months in solitary confinement**, then assignment to the RDU program with **23-hour-per-day lockdown for 9 months**. These sanctions also caused the loss of good-time credits, phone privileges, canteen access, educational programs, and other rehabilitative opportunities.

In 2017, Premier Biotech misrepresented the reliability of its test kits to North Carolina prison officials, downplaying the high false-positive rate. This failure to adhere to basic testing protocols and confirmatory standards deprived me of due process and resulted in wrongful disciplinary convictions with severe, lasting consequences.

### Pattern of Misconduct and Denial of Due Process

I have been subjected to repeat and severe disciplinary sanctions based on unreliable evidence and the complete disregard of procedural safeguards. In eight out of ten recent infractions, prison officials relied solely on unverified statements from inmate informants many with their own disciplinary or criminal motives without conducting a full investigation or allowing me to present evidence in my defense. These uncorroborated accusations resulted in prolonged restrictive housing of 23 hours per day, loss of visitation sons, and family communication (including secure messaging and phone access), removal of personal privileges, and lasting harm to his rehabilitation and release prospects.

This pattern of misconduct is compounded by the facility's misuse of faulty drug testing procedures. Staff used a *Sirchie* and *Premier Biotech* presumptive drug test kit on a small piece of paper allegedly found in my legal mail, which produced a "positive" result for synthetic cannabinoids (K2). The manufacturer's own instructions state that false positives are possible and **all results must be confirmed by an Approved Analytical laboratory** before disciplinary action is taken. No confirmation was sought. Instead, based solely on this unverified presumptive result, I was wrongfully subjected to 30 days in segregation, 6 months in solitary confinement, and 9 months in the RDU program on 23-hour-per-day lockdown — along with the loss of good-time credits, phone privileges, canteen access, and spiritual/educational programs.

In 2017, Premier Biotech misrepresented the reliability of its test kits to North Carolina prison officials, concealing the high false-positive rate and contributing to wrongful disciplinary convictions. The combination of incentivized informants, uncorroborated accusations, and the misuse of unreliable testing equipment reflects a systemic disregard for due process and fairness, resulting in severe and unjust punishment.

This combined section makes the case that **these aren't isolated incidents** — they're part of an ongoing pattern of abuse that's both factually and legally indefensible.

24

# FACTUAL ALLEGATIONS — PATTERN OF MISCONDUCT, UNRELIABLE EVIDENCE, AND DENIAL OF DUE PROCESS

1. I Barnes, Kee'Andus have a repeated series of disciplinary proceedings, been subjected to severe sanctions based on unreliable evidence and without the procedural safeguards required by law.
2. In eight of ten recent disciplinary matters, the facility imposed sanctions based **solely** on statements from inmate informants. These informants had clear, documented incentives (including potential sentence reductions, avoidance of disciplinary penalties, and other benefits) that created strong motives to fabricate or exaggerate allegations. Prison staff accepted these informant assertions without conducting a full, impartial investigation, without seeking independent corroboration, and without affording me a meaningful opportunity to confront or rebut the allegations.
3. The institutional response to informant allegations repeatedly resulted in substantial and compounding harms to me, including but not limited to: placement in restrictive housing or segregation; 23-hour-per-day confinement; suspension or loss of visitation and family communication (including secure messaging and phone privileges); loss of canteen and property privileges; suspension from educational and rehabilitative programs; loss of good-time credits and other consequences that negatively affected my rehabilitation and release prospects.
4. The pattern described above is compounded by the facility's misuse of presumptive drug-testing kits and failure to follow basic confirmatory procedures. The staff tested a small square of paper found in my legal mail using a Sirchie/Premier Biotech presumptive test kit. The test produced a "positive" presumptive result for synthetic cannabinoids (K2).
5. The Sirchie/Premier Biotech presumptive kits include explicit manufacturer warnings that false positives are possible and that **all presumptive results must be confirmed by an approved analytical laboratory** before punitive action is taken. Despite these instructions and the acknowledged potential for false positives, staff did not send the sample for confirmatory laboratory analysis. Instead, relying solely on the presumptive kit result, staff found Respondent guilty of possessing contraband and imposed the following sanctions: thirty (30) days segregation; six (6) months in solitary confinement; and placement in the RDU program with 23/1 lockdown for nine (9) months — together with the loss of good-time, phone access, canteen, educational programming, and other privileges.
6. My discipline based on the presumptive test thus deprived me of liberty and rehabilitative opportunities without the confirmatory testing expressly required by the manufacturer and commonly accepted correctional protocols. Moreover, it appears that Premier Biotech's reliability and the risk of false positives were misrepresented to or downplayed for correctional decision-makers in or about 2017, which contributed to institutional misunderstanding of the need for and importance of confirmatory testing.
7. The combination of (a) uncorroborated informant testimony accepted without independent verification, and (b) disciplinary findings based on unconfirmed, presumptive drug-test results, demonstrates a systemic pattern of disregard for fairness and required procedures that produced severe, unjust, and continuing harm to Respondent.

## LEGAL AUTHORITY

8. The above disciplinary actions deprived me of protected liberty interests and were carried out without the minimum constitutional procedural protections required by the Fourteenth Amendment's Due Process Clause.
9. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that when disciplinary proceedings implicate significant liberty interests — e.g., loss of good-time credits or prolonged segregation — prisoners are entitled to certain minimum procedural safeguards, including advance written notice of charges, a meaningful opportunity to present relevant evidence and call witnesses when not unduly hazardous to institutional safety, and a written statement by the fact finder describing the evidence relied upon and the reasons for the disciplinary action.
10. In *Superintendent v. Hill*, 472 U.S. 445 (1985), the Court held that the findings in prison disciplinary proceedings must be supported by **"some evidence"** in the record. Evidence that is unreliable, uncorroborated, or rooted in manifestly suspect procedures (such as unverified informant testimony or presumptive test results known to produce false positives) cannot satisfy this standard.
11. Courts have repeatedly emphasized that unverified informant statements require careful scrutiny, particularly when informants may receive benefits or have motives to fabricate. See, e.g., *Hensley v. Wilson*, 850 F.2d 269 (6th Cir. 1988) (discussing reliability concerns where informant incentive exists) and related authority examining the dangers posed by incentivized informants.
12. Where disciplinary decisions rest on presumptive chemical or field test results that are known to generate false positives, due process requires reliable proof and, where manufacturer guidance or institutional policy requires confirmatory laboratory testing, courts have recognized the need for such confirmatory procedures before imposing sanctions that affect liberty interests.
13. By (a) accepting informant allegations without independent verification or meaningful opportunity to rebut; (b) relying on presumptive drug-test results without sending samples for required confirmatory laboratory testing; and (c) imposing lengthy segregation and other severe sanctions based on such unreliable and unconfirmed evidence, defendants violated Respondent's constitutional rights to due process and fair adjudication.

## RELIEF REQUESTED

14. WHEREFORE, I respectfully requests that the Court grant relief including but not limited to:

- A declaration that the disciplinary convictions and sanctions described above were imposed in violation of the Due Process Clause of the Fourteenth Amendment;
- An order vacating and expunging the disciplinary findings, infractions, and resulting sanctions from Respondent's institutional record;
- An injunction requiring the facility to follow manufacturer and laboratory-confirmation protocols for all presumptive drug-test results and to establish clear, written procedures

26

- requiring corroboration and reliability assessment for informant-based allegations prior to imposing sanctions;
- Restoration of lost good time, privileges, phone and messaging access, and reinstatement into educational and rehabilitative programs (to the extent such remedies remain administratively feasible);
- Compensatory damages for the physical, psychological, familial, and rehabilitative harms suffered as a result of the unlawful disciplinary process;
- Reasonable attorney's fees, costs, and other relief the Court deems just and proper. If applicable.

## ********Final Statement********

**Affidavit for Complaint**
**Affiant:** K. Barnes #1010067
**Facility:** Foothills Correctional Institution
**Jurisdiction:** North Carolina Department of Adult Correction (NCDAC)

I, **K. Barnes**, offender ID #1010067, being of sound mind I declare under penalty of perjury, hereby affirm that the following statements are true to the best of my knowledge and are based on direct personal experience. This affidavit is submitted to support formal complaint and litigation under **Title 42 U.S.C. § 1983, Title 18, 28, 31** for the **violation of my civil rights, United Constitution the Bill of Rights,** by correctional staff, administrators, and contracted third parties while acting under color of law and to support my claim of constitutional and procedural violations and to request formal review, relief, and accountability from the appropriate oversight and judicial authorities

I request that this affidavit be used as part of a formal complaint and/or civil rights action to investigate and remedy the unlawful, retaliatory, and unconstitutional treatment I have suffered.